UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NICOLE BORDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09CV1148 TIA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income benefits under Title XVI of the Act. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## I. Procedural History

On June 16, 2006, Plaintiff filed applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI), alleging disability beginning June 16, 2006. (Tr. 96-104) Plaintiff's applications were denied on September 5, 2006, after which Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 55-65) On November 14, 2008, Plaintiff appeared and testified at hearing before an ALJ. (Tr. 16-54) In a decision dated December 8, 2008, the ALJ determined that Plaintiff was not under a disability from June 16, 2006 through the date of the decision. (Tr. 8-15) On May 19, 2009, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel. Plaintiff testified that she was 36 years old and received a GED. She was 5 feet tall and weighed 160 pounds. She had no problems reading, writing, using a computer, or performing math. Her only source of income was her daughter's Social Security. She lived in a house with her two daughters, ages 16 and 13. She also had two boys who were out of the house. (Tr. 20-23)

Plaintiff did not receive Medicaid, and she had applied for unemployment benefits two years prior to the hearing after working as a concession supervisor at Sport Service. Plaintiff worked in the food booths and managed 6 to 12 employees. Plaintiff further stated that she applied for unemployment benefits after becoming sick due to her thyroid problem and then being out of work for a year. Plaintiff testified that she last worked June 26, 2005; however, the transcript reflects some confusion regarding the actual year. Plaintiff's job at Sport Service required her to lift boxes and move around beer kegs and soda bibs. Plaintiff opined that the heaviest weight she lifted was about 30 pounds. Plaintiff also worked at McDonald's as a manager from 1990 through 2006. Plaintiff cooked, worked the drive through, and filled in wherever needed. She managed around 8 people but did not have the authority to hire or fire employees. Plaintiff was also a nurse's aid and worked in private homes on a part-time basis. (Tr. 23-32)

Further, Plaintiff testified about her health problems. She stated that she passed out at work and subsequently found out that she had problems with her thyroid. Plaintiff still had her thyroid, but she underwent radiation iodine injections twice. Plaintiff continued to take thyroid medication, which made her tired and cold. Plaintiff also complained of pain in her lower back. She took Tramadol and two other medications for her pain. She testified that the medication made her sleepy. Plaintiff also

2

took medication for asthma. (Tr. 32-39)

Plaintiff further stated that the most she could lift without hurting herself was an empty box. She could lift a gallon of milk from the table but not the floor due to problems bending over. She testified that her daughters performed the house work. Plaintiff was able to cook, but she sat on a stool while preparing meals. She estimated that she could walk a half a block before needing to rest. She could only sit for 30 minutes to an hour and stand for about 30 minutes. Plaintiff went to the grocery store, but she sat at the front of the store while her daughters shopped. She was able to drive to the grocery store, the doctor's office, and the school. She did not drink or smoke, nor did she travel or visit relatives. (Tr. 39-44)

In addition, when Plaintiff watched television, she sat in a recliner with a back massager. Plaintiff also testified that she took naps during the day. About 4 days a week, Plaintiff did not get out of bed at all, other than to use the restroom. She had trouble putting on socks, and she was unable to wear tie shoes because she could not bend over to tie them. Plaintiff also stated that she had difficulty bathing. She had no hobbies, although she previously danced, played basketball, exercised, and walked. (Tr. 44-47)

A Vocational Expert (VE) also testified at the hearing. The ALJ asked the VE to assume a hypothetical individual with Plaintiff's education, training, and work experience. This individual could lift 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour day; sit 2 hours in an 8-hour day; occasionally stoop; occasionally reach overhead; and avoid concentrated exposure to fumes, odors, dust, and gas. In light of this hypothetical, the VE opined that Plaintiff could be a manager of a McDonald's or other fast food restaurant or a concession supervisor as performed in the national economy. (Tr. 49-50)

In the second hypothetical question, the ALJ asked the VE to assume an individual that could lift and carry a maximum of 10 pounds only and have a sit/stand option, with the other limitations still in place. The VE answered that such individual could not perform Plaintiff's past work. However, other jobs existed in the national economy that the individual could perform, such as a customer service representative, cashier, and surveillance system monitor. (Tr. 50-52)

The ALJ's third hypothetical added occasional kneeling and crouching; no crawling or climbing ropes; and occasionally climbing stirs, ramps, ladders, and scaffolds. The VE testified that a hypothetical individual could perform the jobs he mentioned at the sedentary level. Finally, if the hypothetical added the need to take more than 3 breaks during an 8-hour workday, such individual could not maintain a job. (Tr. 52-53)

Plaintiff's attorney also posed a hypothetical question to the VE, asking him to assume an individual of Plaintiff's age, education, and past relevant work, who was limited to a total of 1 hour of sitting, 1 hour of standing, 30 minutes of walking, no stooping, the need to take a nap or lie down during an 8-hour day, and the need to take more than 3 breaks during the day. The VE responded that such hypothetical person could not perform any past relevant work or any other jobs. (Tr. 53)

Plaintiff completed a Disability Report – Adult, indicating that her back problems and no thyroid limited her ability to work. Plaintiff's back hurt and caused her legs to give out. In addition, she experienced a lot of pain when she walked. Her thyroid caused her to become overheated, tired, and dehydrated. (Tr. 128-34) In a Function Report – Adult, Plaintiff stated that she took Ibuprofen in order to function. She also looked after 4 kids. In addition, Plaintiff required help with personal care. She was able to cook meals, but she took longer because she was unable to stand as much. Further, although she was able to do some chores, such activity caused pain. Plaintiff reported that

4

she got around by walking, driving a car, riding in a car, and using public transportation. However, she later stated that she stopped driving because it hurt to look behind and park. She was able to grocery shop and handle money. Plaintiff could no longer walk the dog, play basketball, or dance. Plaintiff regularly went to work and to the store. However, she stated that she did not get out of the house very often and that she spent most of her time in pain or sleeping off the medication. Her condition affected any activity that required the use of her back. She could walk 2 blocks before needing to rest for at least 30 minutes. (Tr. 143-50)

### III. Medical Evidence

Plaintiff received intermittent treatment at Grace Hill Neighborhood Health Center ("Grace Hill") beginning in 2002. Diagnoses included asthma, hypothyroidism, infections, low back pain, tachycardia, and obesity. (Tr. 192, 227-31, 233-34, 245-63, 277-92, 308-26)

On June 24, 2005, Plaintiff complained that she needed more thyroid medicine and may have a yeast infection. (Tr. 234) She complained of low back pain on December 8, 2005. Plaintiff reported that she experienced back pain for several years but that the pain worsened over the past 2 months. She also stated that the pain increased with walking and standing. (Tr. 233)

Dr. Raymond Leung examined Plaintiff on August 16, 2006. Her chief complaints included low back pain and hypothyroidism. Plaintiff stated that she fractured her tailbone as a child and described non-radiating pain. Over-the-counter medications did not help. In addition, she explained that her thyroid problem caused her to get over-heated fast. Dr. Leung noted that Plaintiff's speech, hearing, and understanding were within normal limits and that she developed mild pain during the exam. During the musculoskeletal exam, Plaintiff's gait was normal, and she was able to walk 50 feet unassisted. Plaintiff could heel walk, toe walk, and squat. She demonstrated mild tenderness over

5

her low back, and forward flexion was to 90 degrees. Plaintiff displayed no difficulty getting on and off the examination table or rising from the chair. Her arm, leg, and grip strength were 4+/5. Dr. Leung's impressions were history of fractured tailbone as a child with full range of motion in the lumbar spine and normal gait; and history of radiation treatment for the thyroid. Dr. Leung opined that Plaintiff's back pain may cause difficulties with prolonged walking, climbing, bending, squatting, and lifting. (Tr. 235-37)

Dr. Michael Spearman completed a Physical Medical Source Statement in May 2007. Dr. Spearman diagnosed low back pain, hypothyroidism, asthma, and allergic rhinitis. He opined that, during an 8-hour workday, Plaintiff could sit for 1 hour, stand for 1 hour, and walk a half block. In addition, she could never lift or carry over 50 pounds and could only occasionally lift or carry 5 to 25 pounds. She possessed no limitations in her hands, vision, communication/hearing, and balance. While Plaintiff could never stoop, she could occasionally reach overhead. As for environmental limitations, she could occasionally tolerate exposure to odors or dust and frequently tolerate exposure to noise. With regard to her back pain, Dr. Spearman reported that the pain was constant in duration and frequency. The objective indication of this pain was reduced range of motion. The subjective indications of pain included complaints and sleeplessness. Dr. Spearman further opined that Plaintiff's impairments required her to lie down or take a nap during a normal 8-hour workday and would also require her to take breaks every hour due to pain intolerance. (Tr. 240-43)

During subsequent appointments with Dr. Spearman in 2007, Plaintiff continued to complain of low back pain for over 2 years. She also reported that she could not work. On October 3, 2007, Dr. Spearman noted possible degenerative joint disease or degenerative disc disease, along with hypothyroidism. However, Plaintiff's lower extremity muscle strength and tone were normal, and

6

the straight leg raising test was negative. (Tr. 245-55)

On June 16, 2008, Plaintiff reported constant low back pain and intermittent limb pain in both thighs. Dr. Spearman noted that he might consider an MRI or pain management treatment. (Tr. 259-62)

## IV. The ALJ's Determination

In a decision dated December 8, 2008, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. She had not engaged in substantial gainful activity at any time relevant to the decision. Further, the ALJ found that Plaintiff had the severe impairments of hypothyroidism and unspecified joint disease. However, she did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 10)

After carefully considering the record, the ALJ determined that Plaintiff had a residual functional capacity (RFC) that allowed her to lift and/or carry up to 10 pounds; required a sit/stand option at work; required her to change positions between sitting and standing at will; prevented her from climbing ropes or crawling; allowed her to only occasionally climb stairs/ramps, ladders, and scaffolds; allowed her to only occasionally stoop, kneel, crouch, or reach overhead; and prevented her from working around concentrated exposure to fumes, odors, dust, and gases. Although Plaintiff was unable to perform any of her past relevant work, the ALJ found that, in light of her younger age, high school education, prior work experience, and RFC, a significant number of jobs existed in the national economy that Plaintiff could perform. The ALJ relied on the VE's testimony to find that Plaintiff could work as a customer service representative, cashier, and surveillance system monitor. The ALJ thus concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 10-15)

7

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that she is not engaged in substantial gainful activity; (2) that she has a severe impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence,

the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence

---

[1] The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## VI. Discussion

In her Brief in Support of the Complaint, the Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the RFC is inconsistent with the medical opinions, the ALJ relied on improper medical analysis, and the ALJ improperly weighed Dr. Spearman's opinions. Plaintiff also argues that the ALJ erred in assessing Plaintiff's credibility regarding her symptoms. Finally, the Plaintiff contends that the decision is not supported by substantial evidence because it contains numerous factual errors. The Defendant, on the other hand, maintains that the ALJ properly evaluated Plaintiff's credibility, properly evaluated the medical opinion evidence, and properly formulated Plaintiff's RFC.

### A. The ALJ's credibility determination

Plaintiff claims that the ALJ erred in assessing her credibility and therefore improperly assessed the evidence and Plaintiff's RFC. Defendant, on the other hand, argues that the ALJ properly evaluated Plaintiff's credibility in light of the factors articulated in Polaski.

The undersigned finds that substantial evidence supports the ALJ's credibility determination in this case. "If the ALJ gives a good reason for discrediting the claimant's credibility, the court 'will defer to [his] judgment even if every factor is not discussed in depth.'" Frederickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004) (quoting Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001)). While the ALJ did not discuss every Polaski factor as it related to Plaintiff's credibility, the ALJ did mention these requirements and found that Plaintiff's statements regarding the intensity, duration, and limiting effects of her symptoms were not entirely credible. See Samons v. Astrue, 497 F.3d 813, 820

(8th Cir. 2007) (stating that the ALJ is not required to include a discussion of how every Polaski factor relates to a claimant's credibility).

For instance, the ALJ found that Plaintiff's own testimony concerning her daily activities were inconsistent. Although Plaintiff reported that her daughters performed the housework and that she could only walk half a block, Plaintiff also stated that she could drive herself to the grocery store, doctor appointments, and school. The ALJ found that these inconsistencies demonstrated a greater ability to perform a wider range of activities than she alleged. In addition, the ALJ relied on Plaintiff's own daily function report which indicated her ability to shop for groceries daily, walk, drive, use public transportation, perform some household chores, and look after 4 children. (Tr. 13) "Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 1996).

In addition, the ALJ noted the lack of objective medical evidence supporting Plaintiff's claim of disability. While an ALJ may not discredit a plaintiff's subjective allegations of pain solely because the allegations are not supported by objective medical evidence, an ALJ can make a factual determination that the subjective complaints are not credible in light of contrary objective medical evidence. Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citations omitted)). In the present case, musculoskeletal exams demonstrated good muscle strength and full range of motion in the lumbar spine. No doctor diagnosed a medically determinable back impairment, and the doctors treated Plaintiff conservatively. Plaintiff received only intermittent treatment for her hypothyroidism, asthma, and back pain, demonstrating that she was not precluded from performing work. Further, as noted by the ALJ, Plaintiff did not seek more aggressive treatment for her pain. "A failure to seek aggressive treatment is not suggestive of disabling back pain." Ratio v. Bowen, 862 F.2d 176, 179

11

(8th Cir. 1988).

In short, the ALJ properly assessed Plaintiff's subjective complaints of disabling pain and disbelieved her subjective reports based on inconsistencies in the record. See Eichelberger v. Barnhart, 390 F.3d 584, 589-90 (8th Cir. 2004) (holding that an ALJ may disbelieve subjective complaints of pain because of inherent inconsistencies and that the ALJ has the statutory duty in the first instance to assess a claimant's credibility). Contrary to Plaintiff's argument, the ALJ did not solely rely on the lack of objective medical evidence but found that inconsistencies in the record as a whole did not support Plaintiff's subjective complaints of debilitating pain that prevented her from all types of work. Id. Therefore, the undersigned finds that ALJ properly assessed Plaintiff's credibility.

### B.  The ALJ's RFC determination

The Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence because the RFC is inconsistent with any medical opinion. Plaintiff also maintains that the ALJ relied on improper medical analysis and improperly weighed Dr. Spearman's opinions in reaching the RFC determination. Defendant, on the other hand, contends that the ALJ properly evaluated the medical opinion evidence and formulated Plaintiff's RFC.

The undersigned finds that the ALJ correctly assessed the medical evidence and Plaintiff's RFC in this case. With regard to the medical evidence, Plaintiff asserts that the ALJ did not give proper weight to Dr. Spearman's Physical Medical Source Statement which indicated a reduced range of motion as an objective indication of pain. "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted). However, "an ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Holstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) (citation omitted). Further, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." Swarnes v. Astrue, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted).

In this case, the ALJ found that the opinion offered by Dr. Spearman in May 2007 was based on Plaintiff's subjective reporting rather than objective medical evidence. Dr. Spearman stated that Plaintiff could only sit for 1 hour, stand for 1 hour, and walk ½ block in an 8-hour workday; could occasionally lift/carry up to 25 pounds; could occasionally reach above her head; should never stoop; needed to lie down or take a nap during the day; and needed to take more than 3 breaks. (Tr. 240-243) However, Dr. Spearman's opinion was inconsistent with his treatment notes and with the other medical evidence in the record. While Dr. Spearman's notes are difficult to discern, Plaintiff only complained of back pain, among other complaints, every few months. Despite some mention of further testing, nothing in the record shows that Dr. Spearman ever followed through with any x-rays or pain management. Certainly, if in 2007 Dr. Spearman opined that Plaintiff had been extremely limited since 2005, his treatment notes and subsequent testing would have reflected such severe limitations. In addition, an examination in October 2007 revealed normal muscle strength and tone, as well as negative straight leg raising. (Tr. 253) See Choate v. Barnhart, 457 F.3d 865, 870-71 (8th Cir. 2006) (finding that ALJ properly discredited physician's Medical Source Statement where treatment notes never mentioned restrictions or limitations to the plaintiff's activities).

13

With regard to residual functional capacity, "a disability claimant has the burden to establish her RFC." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations.'" Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "An 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Sieveking v. Astrue, No. 4:07 CV 986 DDN, 2008 WL 4151674, at *9 (E.D. Mo. Sept. 2, 2008). Some medical evidence must support the RFC determination. Eichelberger, 390 F.3d at 591 (citation omitted).

The undersigned finds that substantial evidence supports the ALJ's RFC determination in this case. The record shows that Dr. Lueng conducted a range of motion exam in August, 2006.[2] Plaintiff's grip strength was 4+/5 on both the left and right, as was her upper and lower extremity strength. She had full range of motion in the lumbar spine. Her effort throughout the examination, however, was only fair. During the exam, Plaintiff reported being able to lift 10 pounds and walk 2 blocks. (Tr. 235-39) Likewise, Plaintiff's lower extremity muscle tone and motor strength were normal, and her straight leg raising was negative during an October 3, 2007 examination with Dr. Spearman. (Tr. 253) In addition to this medical evidence, the ALJ accounted for Plaintiff's diagnosed asthma, which required her to avoid concentrated exposure to fumes, odors, dust, and

---

[2] "An ALJ may accord greater weight to a consulting physician only where the one-time medical assessment is supported by better or more thorough evidence or where a treating physician renders inconsistent opinions." Turner v. Astrue, No. 4:08-CV-107 CAS, 2009 WL 512785, at *11 (E.D. Mo. Feb. 27, 2009) (citation omitted).

14

gases. (Tr. 11-12) Further, the ALJ did credit Dr. Spearman's opinion to the extent that Plaintiff required limitations to her ability to climb, crawl, stoop, kneel, crouch, or reach overhead, which was supported by the medical evidence and Plaintiff's testimony. (Tr. 10-11)

The undersigned finds that the ALJ properly assessed Plaintiff's credibility and properly discredited Dr. Spearman's opinion. In addition, the ALJ correctly determined Plaintiff's RFC and found that Plaintiff was able to perform work at the sedentary level, with certain restrictions. His determination was based on all of the evidence, including medical evidence contained in the record. Therefore, because substantial evidence supports the ALJ"s decision, and the Court will affirm.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**. A separate Judgment in accordance with this Memorandum and Order is entered this same date.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of September, 2010.